### Eino Roiko *vs.* Ivar N. Aijala.

### Mary Roiko *vs.* Same.

Worcester.    December 5, 1935. — January 2, 1936.

Present: Rugg, C.J., Crosby, Pierce, Donahue, & Qua, JJ.

*Negligence*, Gross, Motor vehicle, In use of way, Invited person, Guest.

The evidence did not warrant a finding of gross negligence of the operator of an automobile which tipped over after it had "shimmied" and "wobbled" for a distance and he had lost control of it, though its steering gear was in good order and he applied the brakes.

One accompanying the driver of an automobile while he went partly on an errand and partly to try out the automobile, but not to aid the driver in either purpose, was a mere guest.

Two actions of tort. Writs dated October 26, 1931.

The actions were tried in the Superior Court before *Collins, J.*

*S. M. Salny*, for the plaintiffs.

*F. T. Mullin*, (*H. C. Walsh* with him,) for the defendant.

Pierce, J. These are actions of tort arising out of an automobile accident which occurred on May 24, 1931. The

female plaintiff seeks to recover damages for personal in-
juries suffered by her, and the male plaintiff, who is her
husband, seeks to recover consequential damages caused
him by reason of the injuries sustained by his wife. In
each case the declaration is in two counts. The first count
alleges that the female plaintiff, while a guest in a motor
vehicle operated by the defendant, was injured as a result
of the gross negligence of the defendant; the second count
alleges that the female plaintiff, while riding in an auto-
mobile that was being operated by the defendant, at his
invitation and for his benefit and advantage, was injured
as a result of the negligent operation by the defendant of
said motor vehicle. The cases were sent to an auditor,
whose findings were not to be final, who found for the de-
fendant. The cases came on to be heard before a judge of
the Superior Court and a jury. All the evidence material
to the issues raised by this report is contained in the report.
It is agreed that there was evidence which warranted the
jury in finding that the female plaintiff suffered serious
personal injury as the result of the accident and that the
male plaintiff incurred expenditures for hospital and med-
ical services and attention as the result of the injury suf-
fered by his wife; and there is evidence which warranted
the jury in assessing damages in the amount in which it
did assess damages in each case.

At the conclusion of the evidence the defendant filed a
motion in each case that a verdict be directed in his favor
on each of the counts. The judge denied the motions and
submitted the cases to the jury on each of the counts in
each action. Upon the return of the jury and prior to the
recording of its verdicts, the judge, with the consent of
the jury, reserved leave in accordance with the provisions
of G. L. (Ter. Ed.) c. 231, § 120, to order a verdict to be
entered for the defendant in each action if, upon the ex-
ceptions taken or questions of law reserved, the trial judge
or the Supreme Judicial Court should decide that such ver-
dicts for the defendant should have been entered. The
jury returned a verdict on each count for the plaintiff
Mary Roiko and for the plaintiff Eino Roiko. Later the

defendant filed motions for the entry of verdicts in his favor under leave reserved; the judge allowed these motions and ordered the entry of verdicts for the defendant in each case. The plaintiffs saved exceptions thereto, and the trial judge reported the cases to this court in accordance with G. L. (Ter. Ed.) c. 231, § 111.

On the evidence the jury could have found that the plaintiff Eino Roiko had known the defendant for about fifteen years at the time of the accident, and that the defendant was Roiko's closest friend; that the defendant before the accident went riding with the Roikos a few times, and that all those trips were friendly; that they used to visit each other's house now and then; and that Roiko owned a Ford sedan and had a license for driving a Ford automobile. On Thursday before the accident, which occurred on Sunday, May 24, 1931, Roiko and his wife and the defendant and his wife went in the plaintiffs' automobile, at the request of the defendant and his wife, to look over a farm in Townsend which belonged to one Flinkstrom and which the defendant intended to buy. There were a house and shed on the farm and some wood in front of the shed. The defendant expected to complete the deal for the farm on Saturday and they talked of all going over there some time to do some cleaning up work, so that they could go and live there during "the whole summer."

The plaintiffs next saw the defendant on Sunday at 12:30 P.M. when the Aijalas came over to the Roikos' house. The defendant told Roiko that he had bought the farm, and discussed going to the farm after getting the keys from the Flinkstroms. The defendant and his wife said to the plaintiffs: "Let's go over to the farm and clean up the place and throw the wood in," and the plaintiffs assented. They started in the Roikos' automobile; Roiko drove and the defendant showed him how to get to the Flinkstrom farm. Upon their arrival, they learned that the keys were at the Koivo farm which was near the farm the defendant had purchased. Mrs. Flinkstrom suggested that she go with them for the keys as they did not know Mrs. Koivo. About

that time the defendant asked Mrs. Flinkstrom if he could
see the automobile which she had asked him to buy when he
bought the farm, saying that he wished to look it over, try
it out and see how it worked. It was a Dodge automobile;
the defendant tried to start it but could not do it. Roiko
started the automobile and got out. The defendant got in,
backed the automobile out and drove it back and forth to
see how it worked. Mrs. Flinkstrom then suggested that
they go for the keys in that automobile so that the defendant
could try it out on the way, and said that it would be a good
time for her to go to the defendant's farm to point out the
boundaries while there were witnesses present. The plain-
tiffs agreed to the suggestions of Mrs. Flinkstrom and left
their automobile at the Flinkstrom place. The defendant
had told Roiko that afternoon that he had a license to oper-
ate a motor vehicle. He testified that he had never driven
a Dodge automobile before, that he had never driven the
plaintiffs' automobile, that "The shift on the Dodge was
different from the Maxwell car on which he learned to drive,"
and "He did not know how to work the shift."

When they left the Flinkstrom farm the defendant drove
the automobile. Mrs. Flinkstrom sat in the front seat
with the driver, and the others in the back seat. The
Flinkstrom farm was on High Rock Road in Fitchburg.
From there the defendant drove the automobile "fairly
well" over the Ashby Road where there were other auto-
mobiles travelling, and nothing happened on that road.
They then passed over the river road going toward Town-
send, and while proceeding to the Koivo farm were going in
the direction they would have taken to reach the defendant's
farm. On the Townsend Road after they passed over Shel-
don Bridge in the direction of Townsend Center, the road
was straight and the defendant started to pass an automo-
bile in front of him, but desisted at the suggestion of Roiko
as an automobile from the rear was passing them. At West
Townsend the defendant passed the automobile ahead of
him. The road at the point of passing was a State highway,
straight and substantially level. The width of the macadam
portion of the road was sixteen feet and there were gravel

shoulders on both sides. There was evidence for the plaintiffs that, as they were passing the automobile ahead and after they had passed it, the automobile in which they were riding began to go to both sides of the road and that the speed increased. There was also evidence that the defendant was "yanking" the steering wheel back and forth while he was passing and after he passed the automobile, and that this caused the automobile to zigzag for thirty or forty feet until it tipped over.

The defendant, called by the plaintiffs, described the accident, in substance, as follows: "In order to pass the car ahead he made his car go faster, until it was going about twenty-five miles an hour when it passed the other car. Up to this time the brakes on his car were all right, and it was a good dry day. As he passed the other car he was going about twenty-five miles an hour, and after he passed the car a distance of about one hundred feet, he turned to the right side of the road and started to decrease the speed, and at the same time it developed a shimmy; he used the brakes but it then developed a wobble which made the brake useless; he had to stop using the brakes; after that he again used the brakes as quickly and as often as he thought necessary; as he went along the car slowed down and after that it tumbled over. When he passed the car ahead, he went to the left of the car to about the middle of the road. After he passed the car he went back to the right. None of his wheels went off the macadam on to the shoulder of the road. The trouble started after he got over on the extreme right of the road. The car went a distance of about one hundred or one hundred fifteen feet while it was wobbling, after he had first put on the brakes. He did not and could not stop the car in that distance of one hundred or one hundred fifteen feet. He did not dare to stop the car; he lost control of the car; the car went any way it wanted to and he couldn't control it; he yanked the steering wheel first one way and then the other way and then back again; the car would not obey his efforts to make it go straight; the more he tried to make it go straight the more it zigzagged. During this time it was slowing down

every second. He was going about twenty miles an hour before this zigzagging started. The car finally stopped when it tipped over in the middle of the road. When it started zigzagging it was on the right of the road; when it tipped over it was in the middle of the road, and after the accident was over the car was facing toward Fitchburg.''

A motor vehicle inspector of the Massachusetts public works department, called as a witness for the plaintiffs, testified in part as follows: He saw the automobile overturned in the road; ''he made some measurements and observations and some one pointed out certain marks to him.'' Brake marks were evident on the road and when he arrived the automobile was in its original position. He followed the brake marks to the automobile. The brake marks started at the right hand side of the road as the automobile proceeded in an easterly direction, in the direction of Townsend Center. The marks started on the macadam, then went in a right hand direction in which the automobile was proceeding onto the shoulder of the road, then made an abrupt left turn, went out on the macadam part of the surface beyond the center line of the road, then made another abrupt right turn and came to a stop where the automobile tipped over in the road. The brake marks were continuous; the distance from the point where the marks started to the point where the automobile stopped was one hundred fifteen feet, but the marks were not in a straight line. ''They started over on the macadam, went to the right to the shoulder, back to the left, out into the middle of the road and made an abrupt right turn and came to a stop at the car. The distance covered by the marks was greater than one hundred fifteen feet. The car came to a stop at a point half way between the center of the road and the shoulder; the car started overturning at a point twelve feet from the right hand shoulder line of the road and that would bring it over onto the left of the middle of the road, macadam and shoulder, it being a sixteen foot road and three foot shoulder, but it did not overturn on the left hand side of the road. It started to and then went back on to the right. He made an examination of the

automobile after the accident and examined the condition of the tires. The left rear tire was brand new and the surface was very little worn; the right rear tire's thread [*sic*] was worn down practically to the fabric; the front tires were in fair condition; the left rear tire was a larger one than the right rear one; the left was a 6–20; the right was a 5.50–20. He tested the steering wheel apparatus and there was very little play therein; it was impossible for him to test the foot brake as the pedal was locked behind the emergency brake, which was set up tight. He has been identified with the motor vehicle department for nine years, and in connection with his duties he is familiar with speeds of cars and the operation of brakes. The brake marks were continuous which was consistent with the continuous application of the brakes, and there were marks made by both wheels. The brake lining was O.K.; the car was either a 1925 or 1926 model."

Under the first count in each action the burden was upon the plaintiff to establish that the female plaintiff was a guest and that the defendant was guilty of gross negligence resulting in harm to the female plaintiff. It is not contended that the plaintiffs on the first count of the declarations failed to prove that she was a guest in a motor vehicle operated by the defendant when injured. It remains for this court to determine whether the evidence warranted a jury finding that the injury sustained was attributable to the gross negligence of the defendant as that phrase is defined by this court. In *Altman* v. *Aronson*, 231 Mass. 588, it is said that gross negligence is something less than the wilful, wanton and reckless conduct which renders a defendant who has injured another liable to the latter even though guilty of contributory negligence; and that (page 291) "It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected." Tested by this definition the evidence that the defendant was operating a Dodge automobile, which was either a 1925 or a 1926 model, that he was inexperienced, that he had never operated a motor vehicle alone before, that he had never driven a Dodge automobile before, that

the shift of gears on the Dodge automobile of the model of 1925 or 1926 was different from the Maxwell automobile on which he learned to drive, that the rear tires on the automobile were of different sizes, that one of those tires was old and worn and the larger was new and in good condition, that the defendant could or should have known of the difference in these tires when he looked over the automobile at the Flinkstrom farm, that the steering wheel was in good condition and functioned properly, that the automobile was going more than thirty miles an hour as he passed the automobile in front of him, that as he was passing the automobile in front he began to yank the steering wheel first one way and then the other and continued to do so until the automobile tipped over, in spite of the fact that the defendant applied the brakes with full force, and other facts of similar import, considered singly or collectively, as matter of law would not have warranted a finding of gross negligence. The facts in the cases at bar, that the accident happened in the daytime, that the roadway was not slippery or icy, that the road was level and not down grade, that there were no intersecting streets, that the district was sparsely settled, that there was an automobile which the defendant passed, that the speed at the passing was about thirty miles an hour, perhaps increasing as the automobile passed, that there was no protest as to speed by anyone, that there is no evidence that the defendant turned his head away from the road, that the automobile did not skid but wobbled and that the defendant lost control of the automobile in that it did not respond to the wheel, distinguish the cases at bar from any of the cases cited in the plaintiffs' brief, and no attempt is here made to point out the resemblances and differences.

Considering the second count of the declaration in each case, the plaintiffs were bound to establish by a preponderance of evidence that at the time of the accident the female plaintiff was riding in an automobile, operated by the defendant, not merely as a guest but for the benefit of the defendant in the performance of something in which the defendant had an interest, and that the defendant was guilty of at

least ordinary negligence. *Jacobson* v. *Stone*, 277 Mass. 323. *Hall* v. *Smith*, 283 Mass. 166. *Semons* v. *Towns*, 285 Mass. 96. As we understand the brief of the plaintiffs, it is contended that had the trip to the defendant's farm continued unbroken, save with the interval incident to the getting of the key at the Flinkstrom house, there would have been nothing to warrant a finding that the relationship between the parties was other than social; but they contend that, after the change was made from the plaintiffs' automobile to the Dodge automobile, the ride no longer had any social aspects but thenceforward was a trip which was being taken for the primary purpose of conferring a benefit upon the defendant in the performance of which the defendant had an interest. We think the contention is far fetched and that the facts would not warrant a finding that the underlying social purpose of the trip was changed with the change from one automobile to another and the change of drivers. The cases at bar are distinguishable on their facts from the case of *Loftus* v. *Pelletier*, 223 Mass. 63, and are governed by *Flynn* v. *Lewis*, 231 Mass. 550.

*Exceptions overruled.*